CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 30 2006

JOHN F. CORCORAN, CLERK
BY:
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VINCENT JENNELL, JR., ) | |
| Petitioner, ) | Civil Action No. 7:05-cv-00437 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| UNITED STATES OF AMERICA, ) | By: Hon. James C. Turk |
| Respondent. ) | Senior United States District Judge |

Petitioner Vincent Jennell, Jr., a federal inmate proceeding pro se, brings this action as a motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255. Petitioner challenges the validity of his 2002 conviction on charges of conspiracy and distributing heroin that resulted in death or bodily injury. The respondent filed motion to dismiss, later amended, and petitioner responded, making respondent's amended motion ripe for the court's consideration. Upon review of the record, the court concludes that petitioner is not entitled to relief.

### I.

Jennell's involvement with a conspiracy to distribute heroin in the Roanoke Valley started relatively small in 1999 and 2000.[1] He gave money to a co-conspirator, who then traveled to Philadelphia, Pennsylvania, once a week to purchase heroin for redistribution in Roanoke. Later, after the buyer conspirator was arrested on state narcotics charges, Jennell was promoted to purchaser. He had nearly two dozen regular heroin customers, some of whom he used to redistribute the heroin in the Roanoke area.

On July 21, 2000, Dustin Rhodes and his friend went to Jennell's house to trade Xanax for heroin. Rhodes was already under the influence of prescription medication, but wanted something more. Jennell prepared a heroin injection for Rhodes and watched him inject himself. Jennell, Rhodes' friend, and another man present also injected themselves from the same batch of heroin. Jennell then fell asleep. When he woke up a couple hours later, he found Rhodes unresponsive. No

---

[1] The facts related here are gleaned from the plea hearing transcript, Jennell's testimony at sentencing, the presentence report, and other records in the case.

1

evidence suggested that Rhodes used other drugs or alcohol that night after taking the heroin. Jennell and the friend were not able to rouse Rhodes. Jennell's mother, who had been asleep upstairs, told him to call 911. He did so only after first cleaning up the scene and disposing of the remaining heroin. Jennell did not tell the emergency responders that Rhodes had used heroin. Instead, Jennell told them that Rhodes had consumed alcohol and pills. No alcohol was found in Rhodes' blood. From reviewing Rhodes' history and lab work, the toxicologist and the medical examiner were of the opinion that Rhodes died from taking the heroin Jennell gave him. They drew this conclusion from these facts: the amount of morphine was relatively low in Rhodes' blood, but high in his liver, and 6-Acetylmorphine was not present in his blood, but was present in his urine. Acetylmorphine exists for only a short time during the period while the body is metabolizing heroin into morphine. Thus, its presence in Rhodes' urine was a strong indicator that he had taken heroin.

Three days later, on July 24, 2000, Jennell distributed heroin to Raymond Moore, resulting in his death. Moore called Jennell and arranged for him to deliver heroin to Moore and a friend of his. The friend saw Jennell fix the needle for Moore and give him an injection of heroin. All three men got "high" together on heroin that night and had a few beers. Jennell stayed at Moore's house for two or three hours. Moore began experiencing difficulties even before Jennell left the house. Hours later, Moore's friend found him on the porch, unresponsive, and called 911. When emergency personnel arrived, they found that Moore was dead. As a result of Moore's history and lab work, the medical examiner was of the opinion that Moore died as a result of a toxic level of morphine in his system, metabolized from the heroin that Jennell distributed to him. Other drugs were present in Moore's system and may have contributed to his death.[2]

During the month of August 2000, Jennell distributed heroin to Mark Roberts, resulting in

---

[2]Respondent states in the motion to dismiss that the medical examiner and the toxicologist would have testified that the only scenario consistent with the history and toxicology in this case is that the heroin Jennell distributed to Rhodes and Moore caused their deaths. Respondent does not submit copies of the original autopsy or toxicology reports regarding Rhodes and Moore or affidavits from the examiner or the toxicologist, however, and these documents are not part of the criminal case record. Petitioner submits only poor photocopies of portions of the autopsy and toxicology reports.

2

a non-fatal overdose that caused Roberts to go into kidney failure. Roberts had purchased heroin from Jennell between 10 and 30 times. On this occasion, Jennell took the heroin to Roberts at his home in Elliston. After receiving the injection, Roberts overdosed, turned blue, and stopped breathing. A friend of Jennell's who was present with Jennell that night administered CPR to Roberts and put cold water on him until he got his color back and resumed breathing on his own. Jennell then left Roberts alone. Later, Roberts sought medical treatment and was hospitalized for an extended period of time. His kidneys failed, requiring him to undergo dialysis for several months.

In September 2000, City of Salem Police received information that Jennell and two individuals from Philadelphia were at the Knight's Inn in Salem with a large quantity of heroin that they intended to distribute. Conducting surveillance of the area, officers observed Jennell and another individual approach a van in the parking lot. The officers identified themselves, and Jennell and those with him consented to a search of their room. The search revealed heroin, other drugs, and drug paraphernalia.

A grand jury for the Western District of Virginia, Roanoke Division, returned a two-count indictment on March 19, 2002, charging Jennell with conspiracy to distribute heroin and distribution of more than 100 grams of heroin during the years 1999 through 2001, resulting in death or serious bodily injury, in violation of 21 U.S.C.A. § 841(b)(1)(B) and § 846. After consulting with counsel, Jennell pled guilty on October 23, 2002, pursuant to a plea agreement. The agreement included provisions by which Jennell waived his right to appeal and his right to attack his conviction or his sentence collaterally by filing a motion under § 2255. Plea Agr., ¶¶ 7-8. The court conducted a Rule 11 colloquy, questioning Jennell specifically about his waiver of appeal rights and collateral attack rights. Jennell also indicated that he was satisfied with counsel's representation and that he was guilty of the crime for which he was charged. The court found that the plea was knowing and voluntary. The court sentenced Jennell to 120 months' imprisonment, the mandatory minimum sentence for the charge.

Jennell did not appeal. Instead, Jennell attempted to earn a motion for sentence reduction under Fed. R. Crim. P. 35 for substantial assistance to the government. In January 2004, the prosecutor informed Jennell that he had not provided the necessary level of assistance to warrant such a motion for sentence reduction. In early April 2004, Jennell's family hired a toxicologist to review the toxicology reports from the victims in this case to determine what caused their deaths. In a letter dated July 5, 2004, this toxicologist, Richard J. McGarry, informed Jennell that as a professional, he would not have interpreted the toxicology data on Rhodes and Moore as indicating that heroin caused their deaths. Based on McGarry's letter, Jennell now believes that he is innocent of causing the deaths of Rhodes and Moore. In January 2005, he filed a motion to withdraw his guilty plea, pursuant to Fed. R. Crim. P. 32(d). The court denied that motion, Jennell appealed, and the Fourth Circuit affirmed on the reasoning of the district court. Jennell signed and dated his § 2255 motion on July 5, 2005. Jennell alleges the following grounds for relief under § 2255:

1. Petitioner discovered new facts in July 2004---a letter from a toxicologist hired after sentencing, offering his opinion that drugs petitioner distributed did not cause the deaths of Rhodes and Moore, and this new fact proves that a) counsel provided ineffective assistance in advising petitioner to accept the plea agreement; b) petitioner is actually innocent of distributing drugs that caused death or bodily injury; and c) petitioner's guilty plea was unknowing and therefore invalid, as is the plea agreement waiver of the right to bring a collateral attack on his conviction or sentence.

2. Petitioner is entitled to specific performance of the terms of the plea agreement providing that he would receive a sentence reduction motion based on substantial assistance.

## II.

### A. Time Bar

Respondent argues that Jennell's § 2255 motion was not timely filed. The court must agree.

A person convicted of a federal offense has one year to file a § 2255 motion, starting from the latest of the following dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making

4

>    a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2255 para 6. To survive a motion to dismiss a § 2255 motion as untimely, petitioner must demonstrate that his § 2255 motion was timely filed under one of these provisions or that he is entitled to equitable tolling. Harris v. Hutcherson, 209 F.3d 325 (4th Cir. 2000).

Jennell's motion is clearly untimely under § 2255, para. 6(1). The court entered its final judgment against Jennell on May 20, 2003, and the conviction became final ten business days later, on June 4, 2003, when his opportunity to appeal expired. See Fed. R. App. P. 4(b)(A); United States v. Clay, 537 U.S. 522, 525 (2003). Jennell signed and dated his motion on July 5, 2005. Even considering the motion as filed on that date, see Houston v. Lack, 487 U.S. 266 (1989) (finding that petitioner's habeas appeal was considered filed on date that he delivered it to prison authorities for mailing), it clearly was not "filed" within one year of May 20, 2003 as required under § 2255 para. 6(1).

Jennell argues that the court should calculate his filing period under § 2255, para. 6(4), using the date on which he received McGarry's letter, July 10, 2004, as the start of the one year filing period. This argument fails because McGarry's opinion itself is not a "fact" for purposes of para. 6(4). Instead, McGarry's letter is merely an opinion based on facts known to Jennell and his counsel at the time of the guilty plea, namely, the reports of the autopsy results and toxicology tests performed on the bodies of Rhodes and Moore. Jennell fails to demonstrate any impediment preventing him from obtaining an independent evaluation of the test results from McGarry or another expert before the plea hearing.[3] Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) (finding

---

[3] Jennell asserts that ineffective assistance of counsel prevented him from obtaining an independent evaluation of the toxicology data. The court herein determines that counsel was not

5

that time limit under § 2255, para. 6(4) commences when evidence could have been discovered through diligent inquiry, not when it was actually discovered or its significance realized). As McGarry's opinion was thus neither a "new fact" nor discovered as quickly as possible with due diligence, Jennell fails to prove that his § 2255 motion is timely under para. 6(4). As Jennell does not argue any ground on which his motion could be deemed timely under para. 6(2) or 6(3), the court concludes that his § 2255 motion was untimely.

Jennell next argues that he is entitled to equitable tolling of the statutory period because McGarry's letter proves that he is actually innocent of causing death or bodily injury to anyone through his distributions of heroin. Equitable tolling is available only in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Harris v. Hutcherson, 209 F.3d 325, 330 (4th Cir. 2000). To demonstrate actual innocence as a gateway to review of procedurally barred § 2255 claims, petitioner must make a substantial showing that in light of all the evidence, including specific, reliable evidence not presented at trial, "it is more likely than not that no reasonable juror would have convicted him" of the underlying crime. Bousley v. United States, 523 U.S. 614, 623 (1998); Schlup v. Delo, 513 U.S. 298, 327 (1995).

As stated, McGarry's opinion about the deaths of Rhodes and Moore is not a new "fact"; rather, it is a new and different conclusion draw from facts known to Jennell, his family and counsel before the guilty plea. See Bannister v. Delo, 100 F.3d 610, 618 (8th Cir.1996) (expert opinion "putting a different spin on evidence that was presented [at trial] does not satisfy the requirements set forth in Schlup"). Also, McGarry's opinion does not constitute a "substantial showing" under Schlup that Jennell is actually innocent of causing death or bodily injury. McGarry states that the autopsy and toxicology results led him to believe that heroin "was not proven to be the drug that caused" the deaths of Rhodes and Moore. Yet, the state's experts would have testified in direct contradiction--that the same test findings proved that the victims' ingestion of heroin resulted in

---

ineffective in failing to seek independent evaluation of the data.

their deaths. Tr. 10-23-02 at 19-20.

Most importantly, Jennell's conviction rested not only on the evidence that his heroin caused the deaths of Rhodes and Moore, but also on the evidence that his distribution of heroin to Roberts caused serious bodily injury. McGarry did not address the injury to Roberts at all. Jennell offers a purported excerpt from Roberts' testimony to the grand jury as proof that Roberts' kidney failure was not caused by heroin overdose. In the testimony that Jennell submits, Roberts is explaining to the grand jury that after he drank alcohol,

> I did two bags. I mean, of heroin. And what basically happened is I guess my body shut down and I laid on the floor with my body in this position, laying like on this shoulder and the whole right side of my body. My body never pivoted or moved so what it did was set toxicities in my body to where it started shutting my system down. They said if I would have laid like that for maybe an hour more, the doctor, that I would be dead.

Pet. Exh. 9 at 7-8. This pre-indictment testimony clearly does not qualify under Schlup as "new evidence" for purposes of showing actual innocence to excuse Jennell's procedural default. It also does not prove that the heroin Roberts ingested was not a significant factor in causing him to pass out and in the "toxicities" that shut down his kidneys. Even hearing Roberts' lay testimony about his injury and McGarry's testimony about the Rhodes and Moore autopsies, a reasonable juror could find from the facts as a whole that Jennell's distribution of heroin caused death and/or serious bodily injury to all three victims. Therefore, Jennell fails to make a substantial showing of actual innocence on which the court could equitably toll the statutory filing period. The court must dismiss his petition as untimely.

## B. Ineffective Assistance of Counsel and Waiver of § 2255 Rights

Even if Jennell could somehow demonstrate that his § 2255 motion was timely filed, Jennell is not entitled to relief because he waived his right to bring this collateral attack on his convictions. The United States Court of Appeals for the Fourth Circuit has held that plea agreement provisions waiving the right to appeal or collaterally attack a conviction are valid, so long as the defendant voluntarily and knowingly enters the waiver. United States v. LeMaster, 403 F.3d 216 (4th Cir. 2005). Whether the waiver is "knowing and intelligent" depends "upon the particular facts and

7

circumstances surrounding [its making], including the background, experience, and conduct of the accused." United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." LeMaster, 403 F.3d at 221-22. If the court determines that petitioner's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. Id. (internal quotations and citations omitted).

The plea hearing transcript reflects that under the LeMaster standard, Jennell entered a valid guilty plea and plea agreement waiver of his right to bring this action. His statements to the court indicated that he understood the charge and the consequences of his plea. Jennell argues, however, that his plea and waiver were invalid because a) counsel was constitutionally ineffective in failing to have the autopsy and toxicology reports tested by an independent expert before advising Jennell to plead guilty and b) counsel misled Jennell into believing that if he pled, he would receive a sentence reduction motion and serve less than 20 years in prison.

Jennell's latter ineffective assistance claim clearly fails under LeMaster. Jennell's current assertion that counsel promised him a sentence of less than twenty years is in direct contradiction of Jennell's statements to the court under oath that no one promised him anything other than the provisions in the plea agreement. The substantial assistance provision in the plea agreement does not promise a sentence reduction, but merely grants Jennell the opportunity to earn a motion for sentence reduction if, and when, the government decides that he has offered substantial assistance. Plea Agr. at ¶14 ("no one has promised me that such a 'substantial assistance motion' will be made on my behalf").

Jennell's remaining claim of ineffective assistance also fails to overcome his waiver of the right to bring this action. To prove that his counsel's assistance at trial or sentencing or on appeal

8

was so defective as to require reversal of his conviction or sentence, a convicted defendant must meet a two prong standard, showing both counsel's defective performance and resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, he must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. Id. at 687-88. Petitioner must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. Id. at 689.

When petitioner claims that counsel's ineffectiveness led him to plead guilty, petitioner must show (1) that counsel performed deficiently and (2) that "there is a reasonable probability that, but for counsel' errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985); Ostrander v. Green, 46 F.3d 347, 355 (4th Cir. 1995), overruled on other grounds by O'Dell v. Netherland, 95 F.3d 1214 (4th Cir. 1996). Although the Hill prejudice question is subjectively phrased, the court must engage in objective analysis to reach an answer. Ostrander, 46 F.3d at 355. From the perspective of a reasonable defendant in the same circumstances as petitioner, the court must consider such objective factors as the strength of the government's case versus the strength of the defense case and any sentencing benefit received through the plea bargain versus the possible penalty to which the defendant would have been subject if convicted after a trial. Id. at 356. Restated, the prejudice question the court must answer is: would a reasonable defendant in petitioner's shoes, absent counsel's alleged errors, still have pled guilty to avoid facing the possible consequences of conviction at trial?

Jennell cannot overcome the legal presumption that counsel's advice regarding the plea agreement was a reasonable trial strategy. Counsel could reasonably have believed that Jennell had only the slimmest of chances for a win at trial. Eyewitnesses would have testified that Jennell distributed heroin to Rhodes, Moore and Roberts, leading to tragic consequences within a few hours. The government's experts would have testified that according to the toxicology and autopsy results,

9

the heroin Jennell distributed resulted in the deaths of Rhodes and Moore.[4] Thus, counsel could reasonably have believed that further investigation of the toxicology reports would produce, at best, a contradictory opinion about whether heroin caused the deaths and injury, certainly not enough to guarantee acquittal. Most importantly, counsel reasonably could have believed that after a conviction at trial, Jennell would be subject to a mandatory life sentence under 21 U.S.C. § 841(b)(1)(B), based on his March 2000 state court conviction for possession of a controlled substance. To avoid the possibility of a mandatory life sentence, in the face of a strong prosecution case, pleading guilty and taking the mandatory minimum twenty year sentence was a reasonable strategy, particularly since this option also gained Jennell the additional benefit of seeking a substantial assistance motion. Counsel's advice to take the plea bargain does not become deficient representation merely because the assistance Jennell was able to offer did not ultimately garner a sentence reduction motion.

Jennell believes that none of his prior drug convictions could support a sentence enhancement under § 841(b)(1)(B) because under the United States Sentencing Guidelines (USSG), they were considered part of the conspiracy conduct and were not counted in calculating his criminal history classification. He is mistaken. Section § 841(b)(1)(B) provides that if any person conspires to distribute more than 100 grams of heroin "after a prior conviction for a felony drug offense has become final . . . and death or serious bodily injury results from the use of such substance [such person] shall be sentenced to life imprisonment," a substantial fine, or both. The statute does not exclude prior offenses that might also be considered part of the conspiracy conduct. See United States v. Baker, 10 F.3d 1374, 1420 (9th Cir. 1993), overruled on other grounds. The term "felony

---

[4]Courts have interpreted the plain language of § 841(b)(1)(B) to expose a defendant to enhanced punishment upon proof that death or serious injury "was a consequence" of the victim's use of a controlled substance distributed by the defendant. See, e.g., United States v. Monnier, 412 F.3d 859, 862 (8th Cir. 2005). The prosecution does not have to prove that the death or serious injury was proximately caused by the defendant. Id.. Cf. United States v. Sheetz, 293 F.3d 175, 190 (4th Cir. 2002) (finding no error when district court departed upward at sentencing from 60 months to 262 months based on evidence that defendant helped put into motion a chain of events that risked serious injury or death, even though intent to harm was entirely absent and defendant was not directly responsible for the death).

10

drug offense" is defined in 21 U.S.C. § 802(44) as simply "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs." Such a conviction becomes final when the time for taking a direct appeal is expired. United States v. Howard, 115 F.3d 1151, 1158 (4th Cir. 1997).

According to the presentence report, Jennell pled guilty on March 9, 2000, in Bedford County Circuit Court to possession of a Schedule II controlled substance. The judge found the evidence sufficient to convict, but deferred disposition and placed Jennell on supervised probation for one year. This deferred disposition was not a final, appealable judgment under Virginia law. See Randolph v. Commonwealth, 609 S.E.2d 84, 87-88 (Va. App. 2005). On February 2, 2001, however, Jennell again appeared before the circuit court on charges of violating probation conditions. The court then found him guilty, entered the conviction on the original possession offense, and sentenced Jennell to one year in prison, suspended during another two years of supervised probation. This disposition was a final judgment under Virginia law. Randolph, 609 S.E.2d at 88 (citing Fuller v. Commonwealth, 53 S.E.2d 26, 28-29 (Va. 1949). The record does not indicate that Jennell appealed the Bedford County conviction within the required thirty-day appeal period, making the conviction final in early March 2001. See Virginia Code §8.01-675.3. The government had evidence that Jennell continued participation in the drug conspiracy through at least September 2001. Thus, Jennell risked being subject to a mandatory life sentence if convicted after a trial. Howard, 115 F.3d. at 1158; United States v. Lovell, 16 F.3d 494, 497 (2d Cir. 1994); Baker, 10 F.3d at 1420-21.

Based on the same facts, Jennell cannot show that counsel's alleged errors prejudiced him. Even if Jennell had known from the beginning that he would not get a substantial assistance motion and had known about McGarry's opinion letter, he would have been unreasonable to reject the guilty plea. Under such circumstances, no reasonable defendant would have insisted on going to trial when a likely guilty verdict meant a life sentence and no chance to earn a substantial assistance motion.

11

Jennell had hard choices to make in October 2002. Taking counsel's advice, he chose the only reasonable option. His claims of ineffective assistance thus fail under Strickland and Hill and cannot overcome his plea agreement waiver of his right to bring this action.

### III.

In conclusion, the court must grant the government's motion to dismiss. Jennell's § 2255 motion is untimely filed, and he has failed to make a sufficient showing of actual innocence warranting equitable tolling of the filing period. Moreover, Jennell waived his right to bring this action, and his claims of ineffective assistance are without merit. An appropriate order shall be issued this day.

The petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a circuit court of appeals justice or this court issues a certificate of appealability, pursuant to 28 U.S.C. § 2253( c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(1). If petitioner intends to appeal, petitioner must file a notice of appeal with this court within 60 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for the respondent.

ENTER: This 30th day of May, 2006.

/s/ James C. Turk
Senior United States District Judge

12